**UNITED STATES DISTRICT COURT**
**THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MATINA INOCENCIO,

     **Plaintiff,**

     CASE NO.: 3:18-cv-72-J-25084

v.

CAPITAL ONE BANK USA, NA,        **DEMAND FOR JURY TRIAL**

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MATINA INOCENCIO (hereinafter Plaintiff) by and through her undersigned counsel, and files this Complaint against the Defendant, CAPITAL ONE BANK USA NA (hereinafter Defendant), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1. Plaintiff alleges violation(s) of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and to prevent abusive "robo-calls."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 191 L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of modern civilization, they wake us up on in the morning; the interrupt our dinner at night; they force the sick and elderly out of bed; the hound us until we want to rip the telephone right out of the wall." See Mims at 752 (quoting 137 Cong. Rec. 30, 821 (1991)).  Senator Hollings "presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal*, FEDERAL          COMMUNICATIONS          COMMISSION          (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

6. Likewise, the FCCPA was designed and adopted to reinforce individual consumer's rights.

<u>**JURISDICTION AND VENUE**</u>

7. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, attorney fees, and costs.

8. Jurisdiction and venue for the purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

9. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is

appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012); *and Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. Ct. App. 2014).

10. Venue is proper in this District because the Plaintiff resides in this District (Duval County, Florida), the violations occurred in in this District and the Defendant transacts business within this District.

11. Plaintiff is a natural person, and citizen of the State of Florida, residing in Duval County, Florida.

12. Plaintiff is a "consumer" as defined in Fla. Stat. § 559.55(8).

13. Plaintiff is an "alleged debtor."

14. Defendant is a creditor operating from Mclean, VA and is a "creditor" as that term is defined by Section 559.55(5).

15. At all material times herein, Defendant attempted to collect a debt, specifically an improper debt relating to a credit card account (the Debt).

16. The alleged Debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute § 559.55(6), as it arises from personal, family, or household use.

17. At all material times herein, Defendant is a "person" subject to Florida Statutes § 559.72. *See* Florida Statutes, §§ 559.72(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

18. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265

(11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

19. Defendant is a financial entity attempted to collect on an alleged consumer debt from Plaintiff.

20. Defendant is a financial entity with its principal place of business at 1680 Capital One Drive, McLean, VA, 22102-3491, and which conducts business within the State of Florida.

21. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue, (904)-XXX-6263 (hereinafter "cellular telephone"); and was the called party and recipient of Defendant's hereafter described calls.

22. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone with such frequency as can reasonably be expected to harass and in an effort to collect an alleged consumer debt.

23. In or about August 2017, Plaintiff retained undersigned counsel regarding her past due credit card account with the Defendant.

24. In or about August 2017, Plaintiff has repeatedly answered Defendant's collection calls, explained that she was represented by undersigned counsel, and instructed the Defendant to contact her attorney, providing his name and telephone number.

25. However, despite this obvious revocation and statement that she was retained by counsel, she was called almost daily, including Sundays, from August 2017 through December 21, 2017.

26. Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called,

4

using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

27. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

28. Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the telephone number 1-800-955- 6600.

29. Each subsequent call Defendant placed to Plaintiff's cellular telephone number was done so after Plaintiff explicitly revoked consent and without her express consent.

30. Each subsequent call Defendant placed to Plaintiff's cellular telephone number was knowingly and willfully placed to her cellular phone without express consent.

31. Each of the Plaintiff's requests for the harassment to end went ignored.

32. Defendant called Plaintiff on her cellular telephone in excess of sixty (60) times since August 2017 in attempt to collect an alleged consumer debt.

33. Due to the extreme volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call she received from Defendant.

34. Defendant has, or should be in possession and/or control of, call logs, account notes, Autodialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

35. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call her cellular telephone and being clearly on notice that Plaintiff was represented by counsel.

36. Defendant has corporate policies and/or procedures to use an Autodialer or artificial

5

voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendant's call list.

37. The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

38. Defendant's corporate policies and procedures provided no means for Plaintiff to have her cellular number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendant.

39. Defendant has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

40. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call consumers.

41. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

42. Defendant has numerous complaints against it, across the country, asserting that its Autodialer continues to call individuals who have revoked consent to be called by Defendant.

43. Plaintiff expressly revoked consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone number by the use of an Autodialer or an artificial voice or prerecorded message immediately upon Defendant's placement of the calls.

6

44. Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

45. Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

46. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

47. None of Defendant's telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

48. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

49. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of her cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

50. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of her time. The time Plaintiff spent on answered calls was unnecessary because she repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

51. Each and every call placed without express consent by Defendant to Plaintiff's cell phone

was an injury in the form of a nuisance and annoyance to the Plaintiff.

52. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

53. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely her cellular telephone and cellular telephone services.

54. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as she experienced an invasion of privacy and the intrusion upon her right of seclusion. Plaintiff also suffered from stress, embarrassment, indignation, emotional distress, mental distress, pain and suffering, and the phone calls aggravated an existing illness. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, privacy, and reputation. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of her cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I (Violation of the TCPA)

55. Plaintiff incorporates and realleges paragraphs one (1) through fifty-four (54) as if fully set forth herein.

56. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the Autodialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that she wished for the calls to immediately cease and that she was

8

represented by counsel.

57. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

### COUNT II (Violation of the FCCPA)

58. Plaintiff re-alleges and fully incorporates Paragraphs one (1) through fifty-four (54) above as if fully stated herein.

59. At all times relevant to this action, Defendant is subject to and must abide by the law of the State of Florida, including, without limitation, Fla. Stat. § 559.72.

60. By refusing to stop communicating directly with Plaintiff after being on repeated notice that she was represented by counsel, along with excessive collection robo-calls to her cell-phone Defendant violated Fla. Stat. § 559.72:

    a. "[W]illfully engaging in conduct with such frequency as can reasonably be expected to harass the debtor;" Fla. Stat. § 559.72(7) and

    b. "Communicating with a debtor if the person knows that he debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain such attorney's name and address." Fla. Stat. § 559.72(18).

61. Defendant's actions have directly and proximately resulted in Plaintiff's prior and

continuous sustaining of damages as described by Fla. Stat. § 559.77.

62. As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages, statutory damages (up to $1000.00), and reasonable attorney's fees and costs pursuant to Fla. Stat. § 559.77.

63. Additionally, § 559.77 provides a court may award punitive damages as well as equitable relief to Plaintiff such as enjoining further illegal collection activity.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## TRIAL BY JURY

64. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

Dated this 4th of January, 2018.

**MAX HUNTER STORY, P.A**

/s/ **Max H. Story, Esq.**

Max Story, Esquire
Florida Bar No. 0527238
Austin J. Griffin, Esquire.
Florida Bar No. 0117740
328 2ND Avenue North
Jacksonville Beach, Florida 32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
*Attorneys for Plaintiff*